UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| CHANEL NICOLE LOVINGS, ) ) ) Plaintiff, ) ) v. ) ) MARTIN O'MALLEY, ) *Commissioner of SSA*, ) ) Defendant. ) ) | NO. 5:22-CV-00308-MAS |

**MEMORANDUM OPINION & ORDER**

Chanel Nicole Lovings ("Lovings") appeals the Commissioner's denial of her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits (DIB) under Titles II XVI of the Social Security Act. The Court considers the parties' respective briefs. [DE 16 (Pl.'s Br.); DE 17 (Comm'r Resp. Br.); DE 18 (Pl.'s Reply Br.)].

For the reasons discussed below, the Court finds that the Administrative Law Judge's ("ALJ") decision applied the correct legal standards and was supported by substantial evidence. Accordingly, the Commissioner's final decision is hereby **AFFIRMED**.

## I. FACTS AND PROCEDURAL HISTORY

Chanel Nicole Lovings ("Lovings") filed applications for SSI and DIB on April 28, 2020.[1] [Administrative Transcript[2] ("TR") at 272, 274]. Lovings alleges her disability began on December 31, 2014. [TR at 274]. Her claims were denied initially on November 24, 2020, and upon reconsideration on February 2, 2021. ALJ Jerry Lovitt conducted a telephone hearing on August 12, 2021. Lovings and an impartial vocational expert ("VE") appeared and testified. Ultimately, ALJ Lovitt issued an unfavorable decision on February 24, 2021. [TR at 15].

On the alleged date that her disability began, Lovings was 31 years old. [TR at 72]. She had a high school education and had previously held positions in retail, local government, and childcare. [TR 44–45, 315, 626]. Lovings' applications were based on her alleged impairments of multiple sclerosis ("MS"), anxiety, depression, headaches, hand issues, and substance use disorder. She obtained a diagnosis of MS in 2016 but reported joint and vision problems beginning in 2014. [DE 40–41].

The ALJ determined that Lovings' MS, anxiety, and depression diagnoses were severe impairments, but the other impairments were non-severe. [TR at 18]. However, the ALJ found that her severe impairments, combined or individually, did

---

[1] The record inconsistently refers to her file-date as being either April 27, 2020 or April 28, 2020. The Court shall utilize the date indicated on her applications for SIS and DIB, April 28, 2020.

[2] The Administrative Transcript ("TR") is docketed at DE 11-1. The Court shall utilize the pagination generated by the Commissioner when referencing the transcript.

**2**

not meet the requisite level of severity set forth in the applicable listings. [TR at 18]. So, the ALJ considered Lovings' residual functional capacity ("RFC"). He determined that she did have the RFC to perform sedentary work, with the following limitations:

> claimant is occasionally able to climb ramps/stairs, stoop, balance, kneel, and crouch. She is unable to crawl, climb ladders/ropes/scaffolds, or be exposed to unprotected heights. The claimant is capable of no more than occasional exposure to temperature extremes, vibrations and workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost. The claimant is unable to outdoor work and she requires an occupation with an established and predictable routine, with set procedures in place, with minimal changes occurring during the workday, and with no manufacturing sector fast-paced production line or production pace assembly line work, or tandem tasks in a factory setting. The claimant is capable of frequent contact with supervisors, but of only occasional contact with co-workers and the general public. She would miss no more than one day of work per month with a valid doctor's excuse.

[TR at 21]. As she did not have past relevant work as defined by 20 C.F.R. §§ 404.1568 and 416.968, the ALJ relied on the VE's testimony to determine that there were jobs that Lovings could perform that exist in significant numbers in the national economy: garment turner, blower/stuffer, and addresser, which are sedentary and unskilled vocations according to the Dictionary of Occupation Titles ("DOT"). [TR at 27].

Ultimately, the ALJ rendered an unfavorable decision. Lovings appealed the ALJ's decision to the Appeals Council, which denied her request for review. [TR at 1]. This appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) followed.

## II.   LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial

3

evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is

4

substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 416.920(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 416.920(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 416.920(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 416.920(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 416.920(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

## III.   ANALYSIS

Lovings argues that the ALJ erred on two fronts, resulting in harmful error necessitating remand. First, Lovings contends that the ALJ's decision is not supported by substantial evidence because he relied on data and testimony related to purportedly obsolete jobs, resulting in his "identification of an insignificant number of jobs available in the national economy" and impacting the ALJ's disability determination at Step 5. [DE 16-1, PageID# 746]. Second, Lovings argues that the ALJ failed to follow social security regulations when he did not sufficiently evaluate and explain his analysis of the opinions rendered by Megan Shapiro, a psychological consultative examiner, and therefore failed to consider relevant restrictions when assessing Lovings' RFC. [DE 16-1, PageID# 749]. In its Response Brief, the Commissioner responded that the ALJ's decision was supported by substantial evidence and, therefore, the ALJ committed no error. [DE 17]. The Court shall address each contention in turn.

### A.   THE ALJ'S STEP 5 DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

#### 1.   The Court will follow the substantial-evidence test.

The Court analyzes Lovings' first contention solely under the substantial-evidence test. In her Reply Brief, Lovings suggests that the ALJ violated a "legal standard" at Step 5, demanding a different analysis beyond a run-of-the-mill substantial-evidence analysis. [DE 18, PageID# 771] ("[T]he Commissioner attempts to misdirect this Court's attention to the substantial evidence test while conveniently ignoring the fact that Plaintiff's argument centers on the ALJ failure to follow agency

6

rules and regulations, which is out of the reach of the substantial evidence test."). But, in her opening brief, Lovings frames the issue differently: she contends that the ALJ's decision at Step 5 was unsupported by substantial evidence because he relied on outdated data and testimony offered by the VE. [DE 16-1, PageID# 75]. Lovings does not identify a legal standard to which the ALJ failed to adhere.[3] Her claim attacks the VE's testimony and the ALJ's Step 5 determination that relied upon it. This is a quintessential substantial-evidence argument.

### 2. Lovings did not waive her claim by failing to object to the VE's testimony during the telephonic hearing.

The Commissioner avers that the Court should perfunctorily reject Lovings' first claim on procedural grounds by arguing that Lovings waived the claim by failing to "challenge or object to" the VE's testimony during the hearing. [DE 17, PageID# 760]. Indeed, Lovings' attorney had the opportunity to cross-examine the VE regarding his credentials and the reliability of his data but did not do so. [TR at 59–61]; *see infra* n.6. However, this Court cannot identify any authority that suggest a claimant waives a substantial evidence challenge because it was not lodged before an ALJ.[4] And, as Lovings points out, she had no way of knowing the VE's testimony

---

[3] Of course, a decision unsupported by substantial evidence inherently violates 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

[4] The primary authority that the Commissioner cites in support of his waiver argument is *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006). There, waiver was not even an issue. Rather, the court opined that the ALJ did not fail to follow a correct legal standard when he did not develop the record to establish the claimant's onset date. *Id.* at 837. Then, the Court noted that "[claimant's] counsel may not now complain because he failed to cross examine [a psychologist about the onset date] when he had an opportunity to do so, just because he believed that [the psychologist] had offered a favorable opinion." *Id.* Here, *McClanahan* is inapposite.

7

before the hearing, meaning that she did not have the opportunity to research the jobs that the VE said Lovings could perform with her RFC and whether those jobs might be obsolete in the national economy. [DE 18, PageID# 771–72] (citing *Wright v. Berryhill*, No. 4:18-CV-00021-HBB, 2019 WL 498855, at *6 (W.D. Ky. Feb. 8, 2019) ("[B]ecause there are literally thousands of jobs identified in the DOT, it is unlikely that Plaintiff had sufficient personal knowledge about these job descriptions to effectively cross-examine the vocational expert 'on the fly.'")). Thus, the Court finds no waiver and proceeds to the merits of her claim.

### 3. The ALJ did not err in his Step 5 analysis by relying on the VE's testimony.

Lovings argues that the ALJ's Step 5 determination is not supported by substantial evidence. The main evidence the Commissioner offered to carry its burden at Step 5 was the testimony of the VE. Lovings argues the VE's testimony should not be afforded the presumption of reliability because, in forming his opinions about the jobs Lovings would be able to hold with her RFC, the VE solely relied upon the Dictionary of Occupational Titles ("DOT"). [DE 16-1, PageID# 746]. More specifically, she argues that the VE identified occupations defined by the DOT that are, in reality, obsolete and, therefore, not present in significant numbers in the national economy.

The Commissioner has the burden of demonstrating that a significant number of jobs exist in the national economy that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974

8

F.2d 680, 684 (6th Cir. 1992); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). To meet its burden, the Commissioner "rel[ies] primarily on the DOT . . . for information about requirements of work in the national economy." SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704, 65 Fed. Reg. 75760 (2000). The Commissioner may also rely on VEs "to provide evidence at a hearing before an ALJ." *Id.*

Lovings argues that the Court should question VE's reliance on the DOT when job descriptions appear obsolete. *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010) (unpublished 2-1 decision). In *Cunningham*, the Sixth Circuit remanded an application for DIB to consider whether the "document preparer" and "security camera monitor" descriptions in the DOT "were reliable in light of the economy as it existed at the time of the hearing before the ALJ." *Id.* at 616. This decision followed the claimant showing that, at the time of the hearing, the job descriptions were not available on the Occupational Information Network ("O*NET"). The *Cunningham* panel determined that the VE's reliance "on the DOT listings alone" meant that the VE's testimony should not be afforded the presumption of reliability. *Id.*; *Cf. Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7 (E.D. Ky. June 19, 2018) (declining to follow *Cunningham*'s rejection of DOT as a source of "reliable job information").

The Sixth Circuit, in both unpublished and published opinions, has approached the reliability of the DOT differently following *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). Relevant here is a unanimous panel in *O'Neal v. Comm'r of Soc. Sec.*, 799 F.

App'x 313, 317 (6th Cir. 2020) clarified without wholeheartedly disavowing *Cunningham* that "DOT data can establish the existence of jobs in the national economy in significant numbers" and that the pertinent regulation (20 C.F.R. § 404.15566(d)(1)) does not list O*NET as a source of "reliable job information." *O'Neal*, 799 F. App'x at 317. Furthermore, *O'Neal* reiterates that "the ALJ can rely on the DOT to establish that work exists in the national economy." *Id.* (citing *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010)).

More recently, in a published opinion, the Sixth Circuit articulated "twin considerations" that "bolster the value of the [VE's] testimony as well as the ALJ's decision to rely on that testimony." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562–63 (6th Cir. 2022), *cert. denied sub nom. Moats v. Kijakazi*, 143 S. Ct. 785, 215 L. Ed. 2d 52 (2023). One consideration is the credentials of the VE—including his or her certifications and years of experience as a vocational expert. *Id.* at 562. The second consideration is whether the VE's testimony is consistent with the DOT. *Id.*

In this case, the VE identified three jobs that an individual with Lovings' RFC could hold: addresser, garment turner/puller-through, and blower/stuffer. [TR 57–61]. Lovings argues the positions of addresser and garment turner/puller-through are obsolete, leaving an individual with Lovings' RFC to only work as a blower/stuffer. [DE 16-1, PageID# 746]. She also argues that the number of blower/stuffer positions in the national economy identified by the VE—25,000—is insignificant. [DE 16-1, PageID# 748].

First, Lovings has failed to demonstrate that the jobs of addresser and garment turner/puller-through are "obsolete" and, therefore, do not exist in significant numbers in the national economy. She cites several cases outside the Sixth Circuit that she suggests have accepted her obsolesce argument, which the Court considers but notes are not controlling.[5] Lovings does point to two cases within this Circuit, however, that the Court considers more persuasive but are ultimately distinguishable from this case. For instance, one district court reversed and remanded the Commissioner's Step 5 determination for further proceedings, finding that the ALJ erred for not adequately addressing the substance of rebuttal expert testimony that contradicted the VE's testimony (which was supported by the DOT), or providing a rationale for rejecting the claimant's objections raised during administrative proceedings. *Ensley v. Comm'r of Soc. Sec.*, No. 3:21-CV-00326-SKL, 2022 WL 5287798, at *11 (E.D. Tenn. Aug. 10, 2022). Another court reversed and remanded

---

[5] Moreover, none of the cases are quite on point with the jobs and VE testimony offered in this matter. *See Carpenter v. Kijakazi*, No. 21-328, 2022 U.S. Dist. LEXIS 122597, at *33–34 (E.D. La. June 17, 2022), report and recommendation adopted, 2022 U.S. Dist. LEXIS 122516 (E.D. La. July 12, 2022) (citing *Cunningham*, 360 F.App'x at 615) (collecting cases and finding that "the job of 'addresser' as defined by the DOT is obsolete"); *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 225 (E.D.N.Y. 2021) (finding that "the [VE] testimony which formed the basis of" the ALJ's holding "regarding plaintiff's ability to engage in substantial gainful employment" did not constitute substantial evidence when the VE offered testimony about the prevalence of "document preparer" positions in the national economy wildly different than other similarly situated social security cases); *Rhoades v. Comm'r of Soc. Sec.*, No. 2:18-CV-1264-KJN, 2019 WL 3035517, at *1 (E.D. Cal. July 11, 2019), report and recommendation adopted, No. 2:18-CV-1264-JAM KJN, 2019 WL 4605713 (E.D. Cal. Aug. 8, 2019) (noting that the Commissioner "largely agree[d]" with plaintiff's assertion that "addresser" and "document preparer" positions are "obsolete on their face" and that remand was warranted).

11

the Commissioner's Step 5 determination, finding that the VE reliance on the DOT—and the discrepancies between the DOT and O*NET—"present sufficient doubt as to the reliability of the [VE's] testimony to warrant a conclusion" that, consequently, the ALJ's determination was not supported by substantial evidence. *Chinn v. Berryhill*, No. 4:18-CV-00054-HBB, 2019 WL 1173374, at *9 (W.D. Ky. Mar. 13, 2019).

*Ensley* is easily distinguishable from this case because the error lay in the ALJ's failure to adequately consider rebuttal VE testimony or the claimant's objections, which did not occur here. Lovings did not offer rebuttal evidence, nor did her attorney raise any objections. [TR at 59–62]. *Chinn*, on the other hand, closely resembles this case, and the court did accept the claimant's arguments regarding the possibility that some positions listed in the DOT are obsolete. However, and critically, *Chinn* relied upon the unpublished *Cunningham* decision and was decided before *O'Neal* or *Moats*. The Sixth Circuit has since emphasized that a VE's reliance upon the DOT is more than sufficient. In fact, the *Moats* panel held that a VE's "uncontradicted testimony easily qualifies as 'the kind of evidence—**far more than a mere scintilla**—that a reasonable mind might accept as adequate to support a finding about job availability.'" *Moats*, 42 F.4th at 563 (quoting *Biestek*, 139 S. Ct. at 1155 (quotation marks omitted)) (emphasis added).

Here, the Court cannot square *Moats* with a finding that the VE in Lovings' case offered unsubstantiated or unreliable testimony such that the ALJ's decision was not supported by substantial evidence at Step 5. Regarding *Moats*' "twin considerations," the administrative record neither contains the VE's curriculum vitae

nor describes his experience.[6] However, the record does not otherwise suggest that the VE in this case lacked the requisite credentials to render a reliable expert opinion.[7] *See id.* at 652. The ALJ directly asked Lovings' attorney if there were any objections to the VE's testimony, and Lovings' had none. *See supra* n.6. Furthermore, "his assessment that [Lovings] could perform a number of available jobs was consistent with data" from the DOT.[8] *Moats*, 42 F.4th at 652. This is sufficient for

---

[6] Based on the Hearing Transcript, it does appear that the VE's resume and curriculum vitae were provided and reviewed by the ALJ and Lovings' attorney:

**Q:** Okay, Mr. Adams, being reminded that you're still under oath, can you state your name for us please?

**A:** James Adams.

**Q:** And sir, is the resume and CV that you provided and is exhibited in the claimant's case file, is that a current and accurate depiction of your professional qualifications.

**A:** Yes, Your Honor:

**ALJ:** Ms. Hughes, do you have any objection to Mr. Adams testifying as a Vocational Expert in this matter?

**ATTY**: No, Your Honor.

[TR at 55].

[7] *Supra* n.6

[8] The ALJ verified that the VE's testimony was consistent with the DOT:
**Q:** Okay, and sir, is the testimony you provided here today consistent with the DOT, and if you did not touch upon a topic not addressed by the DOT . . . can you tell me what you base that portion of your testimony on?

13

the ALJ's to determine that the jobs existed in the national economy and for that determination to be supported by substantial evidence. *Id* at 653.

Moreover, the ALJ's finding that work exists in the national economy significant numbers is supported by the VE's testimony. The VE testified that garment turner had 36,000 jobs in the national economy; blower/stuffer had 25,000 jobs in the national economy with a reduction of 50%; and addresser had 19,000 jobs in the national economy. [TR at 56–59]. While there is no "special number" between a "significant number" and "insignificant number" of jobs, Lovings fails to offer a compelling argument for why the combined number of jobs identified by the VE would be insignificant. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Accordingly, the Court concludes that the ALJ's Step 5 determination is supported by substantial evidence.

B. **ALJ FAILED TO ADEQUATELY ANALYZE RESTRICTIONS ASSESSED BY PSYCHOLOGICAL CONSULTATIVE EXAMINER IN VIOLATION OF 20 C.F.R. §§ 404.1520C AND 416.920C.**

Next, the Court considers Lovings' contention that the ALJ failed to follow social security regulations—20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b)[9]—when he evaluated the opinion rendered by the psychological consultative examiner, Megan Shapiro ("Ms. Shapiro"). Specifically, Lovings avers that the ALJ "failed to

---

**A:** It is consistent [with the DOT] with the exception of . . . the off task, and absenteeism, which is not covered but I explained where I got those figures.

[TR at 59].

[9] The language in each regulation is identical, applying to DIB and SSI claims, respectively.

adequately evaluate and sufficiently explain his analysis of the restrictions assessed by Ms. Shapiro." [DE 16-1, PageID# 751]. Lovings claims this omission resulted in an RFC unsupported by substantial evidence.

For claims filed March 27, 2017, or later, the agency does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).[10] Instead, the Commissioner "will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. §§ 404.1520c(b); 416.920c(b) (emphasis added).

The new regulations provide that "administrative law judges will now evaluate the 'persuasiveness' of medical opinions by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation." *Jones v. Comm'r of Soc. Sec.*, No. 3:19-CV-01102, 2020 U.S. Dist. LEXIS 62143, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020) (quoting *Gower v. Saul*, 2020 U.S. Dist. LEXIS 39826, 2020 WL 1151069, at * 4 (W.D. Ky, March 9, 2020) (citing 20 C.F.R. § 404.1520c(a) and (b));

---

[10] Social security regulations define medical opinions as statements "from a medical source about what [the claimant] can still do despite [his or her] impairment(s)[.]" 20 C.F.R. § 404.1513(a)(2). Medical opinions also include a medical source's statements about a claimant's ability to (1) "perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions"; (2) "perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;" (3) "perform other demands of work, such as seeing, hearing, or using other senses;" and (4) "adapt to environmental conditions, such as temperature extremes or fumes." *Id*. at (i)–(iv).

see also *Ryan L. F. v. Comm'r of Soc. Sec.*, No. 6:18-CV-01958-BR, 2019 U.S. Dist. LEXIS 207152, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citing 20 C.F.R. §§ 404.1520c(a), (b) (1), 416.920c(a) and (b) (1)) (alterations in original)).

The five factors to be evaluated are supportability, consistency, relationship with the claimant, specialization, and other factors, but supportability and consistency are acknowledged to be the most important factors for consideration. 20 C.F.R. § 416.920c(c)(1)–(5); 20 C.F.R. § 416.920c(b)(2). The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations define "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

While Lovings contends that the ALJ did not correctly assess the supportability and consistency factors in evaluating Ms. Shapiro's opinions, the Court

disagrees. Lovings correctly notes that the ALJ did not explicitly articulate the "supportability" and "consistency" factors when discussing Ms. Shapiro's medical opinions. *See, e.g.*, [DE 16-1 (Pl's Br.), PageID# 750] (arguing that "[t]he ALJ offered no further analysis of the opinion—particularly not even a mention (much less consideration of) the supportability of the opinion"). However, the ALJ was not required to articulate the supportability or consistency at the "source-level." 20 C.F.R. § 404.1520c(b)(1). The regulations provide:

> [I]t is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. **Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis** using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. **We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually**.

*Id.* (emphasis added); *compare* 20 C.F.R. § 416.920c(b)(1) (mirroring SIS regulation).

Here, the ALJ did evaluate the supportability and consistency of the medical evidence in sufficient detail so as to comply with social security regulations. In a composite analysis of all the medical evidence, the ALJ weighed the consistency and supportability factors together:

> Turning to the medical opinions on record, the undersigned has considered the persuasiveness of the opinions as provided by medically acceptable sources considering several relevant factors, with the more important ones being the consistency of the opinion with the other medical evidence as contained in the case file, and also the degree of support the opinion has by the overall objective medical evidence record as contained in the longitudinal treatment history. With regard to supportability, the undersigned takes particular note of the degree to

17

> which an opinion was properly supported by an explanation with relevant clinical evidence, such as any corroborating objective medical signs and/or laboratory findings.

[TR at 24]. Lovings does not explain why this analysis does not comply with social security regulations. However, even if the ALJ's composite analysis of the factors was insufficient, the ALJ's discrete discussion of Ms. Shapiro's medical opinions nonetheless satisfies 20 C.F.R. §§ 404.1520c and 416.920c.

First, as to the consistency factor, the ALJ discussed Ms. Shapiro's medical opinions in conjunction with the broader spectrum of medical and nonmedical evidence in the record. [TR at 19–21, 23, 25]. This included a detailed examination of Lovings' cognitive functions, social interactions, and daily activities. Specifically, Ms. Shapiro's observations of Lovings' intact immediate recall, awareness of recent events, and absence of thought disorder were juxtaposed with Lovings' self-reported abilities to manage funds, pay bills, and socialize. [TR at 20]. This, too, was compared with Lovings' UK Healthcare examination that indicated "intact memory functions, intact articulation, an ability to follow commands, and intact comprehension[.]" [TR at 19].

Similarly, the ALJ discussed Lovings' moderate limitation as to interacting with others, comparing Dr. Adonteng Kwakye's consultative exam (demonstrating "intact communication skills and good insight") with Ms. Shapiro's evaluation, which noted that Lovings "made good eye contact." [TR at 19]. The ALJ even juxtaposed the medical evidence against Lovings' presentation during the hearing, noting that she "presented as polite and with no problems communicating at all, was a good historian of the medical history, and was socially engaging with a pleasant and

18

professional demeanor." [TR at 19–20]. This thorough comparison, paired with his finding that "Ms. Shapiro's opinions are largely persuasive because they are **consistent** with the medical record[,]" certainly constitutes a discussion of the consistency factor. [TR at 25] (emphasis added).

Regarding the supportability factor, the ALJ likewise thoroughly discussed the alignment of Ms. Shapiro's findings with the overall medical record. Multiple times, the ALJ opined how the medical sources in the record compared to Lovings' self-reported capabilities in managing daily life and her actual restrictions. [TR at 20, 23, 25]. Moreover, he clearly articulated that he found "Ms. Shapiro's opinions [to be] largely persuasive since they are largely **supported** by Ms. Shapiro's exam findings." [TR at 25] (emphasis added). The ALJ's decision was based on this thorough assessment in which clearly articulated the supporting evidence for Ms. Shapiro's conclusions. This assessment as a whole, likewise, constitutes a satisfactory discussion of the supportability factor.

To the extent that Lovings critiques the ALJ's decision for not thoroughly expounding upon the medical evidence underpinning his consistency or supportability determinations, the regulations do not call for the depth of analysis that Lovings demands. The ALJ's approach in constructing a "logical bridge" between Ms. Shapiro's medical opinion and the broader medical evidence adheres to the judicial standard of adequately linking the evidence to the ALJ's determinations. *Terhune v. Kijakazi*, No. 3:21-CV-37-KKC, 2022 U.S. Dist. LEXIS 130309, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022). Ultimately, the ALJ's decision addressed

supportability and consistency factors when reviewing Ms. Shapiro's opinions and juxtaposed her findings with other objective medical and nonmedical evidence in the record. This analysis was satisfactory because supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). Accordingly, the Court finds that the ALJ did not err concerning his assessment of Ms. Shapiro's medical opinions in accordance with 20 C.F.R. § and the RFC analysis that followed.

## IV.   CONCLUSION

The Court may not substitute its independently reached judgment for the ALJ. Rather, the Court may decide only whether the ALJ's actual analysis is supported by substantial evidence and complies with applicable legal standards. *Warner*, 375 F.3d at 393. Here, the Court rejects Lovings' challenges to the ALJ's decision and finds that it was supported by substantial evidence and adhered to applicable social security regulations.

For all of the reasons discussed, the Commissioner's final decision is **AFFIRMED**. A corresponding Judgment will follow.

Entered this 30th of January, 2024.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY